IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BARYO, JR.; BRETT | ) | |
| BAUGHMAN; BETH BAUGHMAN; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP MORRIS USA, INC.; R.J. | ) | |
| REYNOLDS TOBACCO CO.; BROWN & | ) | |
| WILLIAMSON HOLDINGS, INC., f/k/a | ) | Case No. 05-1182-CV-W-NKL |
| BROWN & WILLIAMSON TOBACCO | ) | |
| CORP.; LORILLARD TOBACCO CO.; | ) | |
| HILL & KNOWLTON, INC.; THE | ) | |
| AMERICAN TOBACCO CO.; LIGGETT & | ) | |
| MYERS, INC.; LIGGETT GROUP, | ) | |
| INC.;UNITED STATES SMOKELESS | ) | |
| TOBACCO CO.; and THE TOBACCO | ) | |
| INSTITUTE; | ) | |
| | ) | |
| Defendants. | | |

ORDER

        Pending before the Court is Defendants Lorillard Tobacco Company, Philip Morris

USA, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., and U.S.

Smokeless Tobacco Co.'s (collectively, "the Moving Defendants") Motion to Dismiss or

in the Alternative for a More Definite Statement [Doc. # 21]. Also before the Court is

Plaintiffs William Baryo, Jr., Brett Baughman, and Beth Baughman's (collectively

"Plaintiffs") Motion for Entry of Default [Doc. # 25] against Defendants Hill &

Knowlton, Inc., the American Tobacco Co., and the Tobacco Institute's (collectively, "the

1

non-answering Defendants").  For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, and the Motion for Entry of Default is denied.

## I.      Background

### A.      Factual Background

Plaintiffs allege the following facts in their Complaint, which the Court assumes as true for the purposes of resolving a Motion to Dismiss.  Plaintiffs are the surviving spouse and children of Cathy Y. Baryo ("Baryo"), who died on January 1, 1999.  Baryo smoked Marlboro, Basic, and Merit cigarettes, and other cigarettes manufactured by one or more other Defendants cigarette manufacturers.  Baryo became addicted to nicotine found in cigarettes, and various attempts to quit smoking were unsuccessful.  She died as the result of smoking cigarettes.

### B.      Procedural History

Plaintiffs filed this suit on December 28, 2001, in the Circuit Court of Jackson County, Missouri, but did not serve any of the Defendants until June 2005.  Those Defendants who acknowledge proper service initially filed a Motion to Dismiss in the state court, but they subsequently removed to federal court and refiled their state court briefing on their Motion to Dismiss.

Plaintiffs claim to have served all other Defendants in June 2005.  They offer Returns of Service filed in Jackson County Circuit Court for Hill & Knowlton, Inc., c/o United Corporate Services, Inc., in Jefferson City, T. Daniel, Designee; the American Tobacco Company, c/o D. Green, Designee, in Jefferson City; and the Tobacco Institute,

2

c/o E. King of CT Corporate System in St. Louis. After these Defendants failed to answer, Plaintiffs moved for an entry of default against them.

## II. Motion to Dismiss

Plaintiffs allege seven Counts against all Defendants in their Complaint: (1) products liability–negligence, (2) strict products liability, (3) fraud, (4) fraud by silence, (5) "undertaking special duty," (6) civil conspiracy, and (7) violation of the Missouri Merchandising Practices Act. The Moving Defendants seek dismissal of all seven claims on various grounds.

### A. Failure to Prosecute

The Moving Defendants argue that Plaintiffs' entire lawsuit should be dismissed for failure to prosecute because they did not attempt to serve any of the Defendants for three and a half years after filing their complaint in state court. Whatever delay Plaintiffs may have caused in failing to timely prosecute their claim in state court should have been addressed in that forum. Instead, the Moving Defendants elected to remove the claim to federal jurisdiction and now ask this Court to find that Plaintiffs' conduct in the state court was unreasonably dilatory under applicable state court procedural rules.

Had this case been filed originally in this Court, the Plaintiffs would have been ordered to show cause after 40 days why their case should not have been dismissed for failure to serve. The state court follows different procedures: there is evidence before the Court showing that Plaintiffs requested and received two continuances from the state court during the case's pendency there. This Court will not second guess the wisdom of

3

those continuances. While Defendants claim to be prejudiced by the delay because medical records may have been destroyed three years after Baryo's death, they offer no evidence that such records have been destroyed or that they will be otherwise unable to conduct discovery. The Court will not grant the Moving Defendants' Motion to Dismiss solely for failure to prosecute.

### B. Counts I and II: Negligence and Strict Products Liability

Plaintiffs allege that Baryo smoked Marlboro, Basic, and Merit cigarettes, as well as various other brands manufactured by one or more of the Defendants. The Moving Defendants argue that Plaintiffs have not alleged sufficient facts to state a claim for negligence or strict liability against any Defendant other than Phillip Morris because they have not identified any specific cigarettes smoked by Baryo other than those manufactured by Philip Morris.

The Federal Rules of Civil Procedure operate under a notice pleading regime in which a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that Rule 8 requires only enough information to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* A motion to dismiss for failure to state a claim should only be granted if "it appears beyond doubt that the plaintiff can

4

prove no set of facts in support of his claim which would entitle him to relief."

*McCormick v. Aircraft Mechs. Fraternal Ass'n*, 340 F.3d 642, 644 (8th Cir. 2003).

The moving Defendants have failed to show that Plaintiffs can prove no set of facts to support their wrongful death claims for negligence and strict products liability. However, the Court also concludes that the Complaint does not give any of the Moving Defendants, other than Philip Morris, fair notice of which of their products are at issue. The Court will deny the Motion to Dismiss Counts I and II for failure to state a claim on the condition that Plaintiffs provide a more definite statement, under Fed. R. Civ. P. 12(e), to identify all the brands of cigarettes which contributed to their decedent's death.

### C. Count III, IV, and VII: Fraud, Fraud by Silence, and Violation of the Missouri Merchandising Practices Act

The Moving Defendants argue that Counts III, IV, and VII must be dismissed because Plaintiffs' fraud, fraud by silence, and Missouri Merchandising Practices Act ("MMPA") claims are not cognizable in a wrongful death suit. Although no Missouri case resolves this precise issue–whether MMPA and common law fraud claims can be maintained in a wrongful death suit–the Court predicts that Missouri courts would allow wrongful death suits to proceed on both common law fraud and MMPA theories in limited circumstances.

The Missouri Wrongful Death statute creates a cause of action maintainable by a decedent's survivors where "the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof."  Mo. Rev. Stat. § 537.080.

5

If, however, a decedent sustained some personal injury to his health or person which did not result in his death, "such cause of action shall survive to the personal representative of such injured party" rather than to the decedent's survivors.  Mo. Rev. Stat. § 537.020.  In other words, if a person is physically injured and dies as a result of that injury, the cause of action for that fatal injury accrues to the person's survivors as defined in the wrongful death statute.  By contrast, if a person is physically injured but dies as a result of something other than that injury, the cause of action for the non-fatal injury accrues only to the decedent's estate through his personal representative.  *See Wollen v. DePaul Health Center*, 828 S.W.2d 681, 685 (Mo. 1992) ("The language of the survivorship statute and the wrongful death statute are mutually antagonistic.  The survivorship statute applies when the injury alleged did *not* cause death, and the wrongful death statute applies when the injury did cause death.").

The Moving Defendants argue that Plaintiffs cannot pursue a fraud claim in a wrongful death action because fraud compensates for a loss in the value of property while the wrongful death statute provides only for personal injury damages.  Defendants cite *Gremminger v. Mo. Labor & Indus. Relations Comm'n*, 129 S.W.3d 399, 403 (Mo. Ct. App. 2004), for the proposition that "[a]n action for fraud and deceit is not a personal injury . . . ."  They also cite *Jurich v. General Motors Corp.*, 539 S.W.2d 595, 600 (Mo. Ct. App. 1976), for the proposition that "[a] cause of action for deceit is one which protects the formulation of business judgments without being misled by others."  Finally, they cite *Walsh v. Ingersoll-Rand Co.*, 656 F.2d 367, 370 (8th Cir. 1981), for the "general

6

rule . . . that fraud is an economic tort and thus protects only pecuniary losses." From these general principles, the Moving Defendants extrapolate a bright line rule precluding personal injury or wrongful death damages in all fraud cases. A closer reading of the cases cited compels the opposite conclusion.

*Gremminger* involved an issue of whether an action for fraud in a building contract was a personal injury or an injury merely to a property interest. If it were personal, the injury could be compensated under the Tort Victims Compensation Act. If it were merely an injury to a property interest, then the Plaintiffs could not recover from the Victim's Compensation fund. *Id.* at 401-02. The Missouri Court of Appeals held that "[a]ctions for fraud and deceit are considered property torts and 'more than merely personal' when they involve matters diminishing the property of the person defrauded." *Id*. at 403. The key use of "when" in the preceding sentence qualifies the holding to such frauds that diminish the value of property. *Gremminger* cannot be read to hold that all fraud claims are exclusively "property" torts for which personal injury damages can never be recovered.

In *Walsh,* the Eight Circuit notes the "general rule" that "damages for emotional harm are not recoverable in actions in fraud." The Court goes on to explain that "Missouri cases . . . have held that no recovery is allowed for mental suffering in fraud cases, absent physical injury, unless the tortfeasor acted willfully or maliciously." 656 F.2d at 371. The Court's explanation suggests that damages for mental suffering would be allowed in cases where there were some physical injury resulting from the fraud.

7

Surely, if damages were available for emotional suffering in fraud cases resulting in physical injury, the plaintiff could also recover damages for the physical injury itself.

Where *Gremminger* and *Walsh* cast doubt on the Moving Defendants' argument, *Jurcich* undermines it explicitly. In that case, the Missouri Court of Appeals explained:

> The courts of this state follow the rule that in cases of fraud and deceit the defendant is responsible for those results, injurious to the plaintiff, which must be presumed to have been within defendant's contemplation at the time of the perpetration or commission of the fraud, and that plaintiff may recover for any injury which is the direct and natural consequence of plaintiff's acting on the faith of the defendant's false representations. In those circumstances the plaintiff is not limited to general damages, but he also may recover special damages which have proximately resulted from the fraud.

539 S.W.2d at 601. It must be noted that the Court of Appeals affirmed the trial court's directed verdict in favor of the defendants anyway because the plaintiff had not alleged or proven that he sustained any pecuniary loss in addition to his pain and suffering. *Id.* In view of *Jurcich,* it appears that Missouri courts do allow personal injury damages in fraud claims so long as (1) the type of injury could be "presumed to be within the defendant's contemplation at the time of the perpetration or commission of the fraud;" (2) the injury was the "direct and natural consequence of plaintiff's acting on the faith of the defendant's false representations," and (3) the plaintiff proves all the other necessary elements of fraud, including that she suffered pecuniary loss. If the personal injury caused by the fraud results in the victim's death, there is no reason to believe that Missouri would not allow the decedent's survivors to sue in wrongful death.

8

This conclusion is further supported by the language of the wrongful death statute itself. Mo. Rev. Stat. § 537.080 grants survivors a cause of action when "the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof . . . ." The inclusion of the term "transaction" along with "act, conduct, occurrence or circumstance" suggests that a wrongful death suit may be maintained for a death resulting from an exchange of goods or services. Strict products liability is one example of such a transaction-based theory of liability clearly included within the statute. It would make little sense if the Missouri General Assembly intended to allow survivors to sue negligent manufacturers but not fraudulent ones.

Thus, the issue to be decided by the Court in the pending motion to dismiss is not just whether Plaintiffs may ever pursue a fraud claim in a wrongful death action. Rather, it is whether they can prove some set of facts establishing all the necessary elements of fraud in addition to establishing that their decedent suffered foreseeable fatal injuries resulting from her direct reliance on the Defendants' false representations. Based upon the allegations in the Complaint, which the Court assumes as true for the purposes of a motion to dismiss, the Court cannot say that Plaintiffs cannot prove any set of facts in support of their fraud claims.

There is the additional question of whether the MMPA, in creating a statutory cause of action related to but different than common law fraud, also allows damages for personal injury so as to support a wrongful death claim. By its own terms, the MMPA

9

creates a private right of action for anyone who "suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful" by the Act. Mo. Rev. Stat. § 407.025. The Moving Defendants argue that this statutory language limits recovery to damages for losses of money or property and does not include personal injury damages. They cite *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994), for the proposition that the measure of damages for an MMPA claim is limited to the difference between the actual value of the property purchased and what its value would have been if it had been as represented, i.e., the benefit of the bargain.

Personal injury damages were not an issue in *Sunset Pools*, so that court did not specifically consider whether such injuries could be compensated under the MMPA. However, the Missouri Court of Appeals did note that "[i]n addition to creating a cause of action for unlawful merchandising practices, section 407.025 authorizes the court to award actual damages, and the court may, in its discretion, award punitive damages, attorney's fees, and such equitable relief as it deems necessary or proper." *Id.* Further, the court explained that, because "[t]he purpose of the Merchandising Practices Act is to supplement the definitions of common law fraud in an attempt to preserve fundamental honest, fair play and right dealings in public transactions [,] . . . we shall refer to the remedies for common law fraud" to determine what an MMPA plaintiff may recover. *Id.* As discussed above, Missouri does allow damages for personal injuries in common law

Case 4:05-cv-01182-NKL   Document 48   Filed 05/19/06   Page 10 of 21

fraud cases under the right circumstances. That reasoning applies with equal force to claims under the MMPA.

### D. Pleading with Particularity in Counts III, IV, VI, and VII

Plaintiffs' claims for Fraud, Fraud by Silence, Civil Conspiracy, and violations of the MMPA are not pleaded with sufficient particularity. Although the Federal Rules require only notice pleading in general, they also require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The "circumstances" of the fraud "'include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Commercial Property Investments, Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (internal citations omitted).

In Count III, Plaintiffs allege that the Defendants

directly or indirectly, jointly and severally, made numerous representations to the general public, including Mrs. Baryo, including but not limited to representations that cigarettes and nicotine were not addictive; that smoking was healthy; that smoking was beneficial and socially desirable; that there was no scientific, medical or other evidence linking smoking with cancer or other diseases; that the paramount concern of [the Defendants] was the health of the public; that they would support independent scientific and

11

medical research on the relationship between smoking and health, and that they would disclose the results of such research."

Compl. Count III, ¶ 2. These are the sort of conclusory allegations that are insufficient to satisfy Rule 9(b). Count IV includes similarly conclusory language. Both Counts must be amended to comport with the Federal Rules.

Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims. *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd, Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3rd Cir. 1994). The private right of action created by the MMPA requires proof of, among other things, an "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020. Thus, fraudulent conduct of some sort is an element of Plaintiffs' MMPA claims and must be pleaded with particularity.

Plaintiffs' civil conspiracy claim, Count VI, suffers from the same defect. "Conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo. Ct. App. 1993). Almost all of the wrongful acts allegedly underlying the conspiracy count in Plaintiffs' Complaint are misrepresentations, omissions, or concealments of material information. The only arguably non-fraud-based allegation in Count VI is a conspiracy to manufacture unreasonably dangerous and defective products. But all subsequent paragraphs that

12

elaborate on that conspiracy allege that Defendants were manufacturing those products in full knowledge of their danger without sharing that information with the public. To the extent the Plaintiffs' conspiracy claim is based on misrepresentation, it must be pleaded with particularity.

Rather than dismissing Counts III, IV, VI, and VII, the Court will grant Plaintiffs leave to amend their Complaint so as to plead these four counts with more particularity as required by *Commercial Property Investments*, *supra*, and Fed. R. Civ. P. 9(b).

### E. Count V: Undertaking a Special Duty

Plaintiffs allege in Count V of their Complaint that Defendants issued a series of advertisements, beginning in January 1954, that Defendants were participating in the formation of the Tobacco Industry Research Committee ("TIRC") "to provide services to the American Public in general, and to smokers and potential smokers in particular." Compl. Count V, ¶ 4. Plaintiffs argue that these advertisements constitute the undertaking of a special duty under the Restatement (Second) of Torts § 323, which provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

13

Although Missouri recognizes a cause of action for a breach of a special duty, *Green v. Unity Sch. of Christianity*, 991 S.W.2d 201, 205 (Mo. Ct. App. 1999)(citing *Stanturf v. Sipes*, 447 S.W.2d 558, 561-62 (Mo. 1969), no such special duty could have been undertaken in the present case.

In *Green,* a residential property management company advertized in its brochure that "our Security Department provides 24-hour building and grounds security with special emphasis on off-hours. The officers also provide help to residents and guests on request. The dispatch team monitors alarms, handles radio traffic, and is ready to respond to any emergency 24 hours a day." *Id.* at 202-03. After a man drowned on the property, his wife sued the management company under Restatement (Second) of Torts § 323, alleging a breach of a special duty it had undertaken in its brochure. The Missouri Court of Appeals upheld summary judgment in defendant's favor because there was no evidence that anything in the brochure could qualify as an "undertaking." The court held that "the record does not reveal when, where or to whom that text was published. There is no evidence that the decedents even knew about this brochure. We conclude that the publishing of that brochure, under the facts of this case, is not an undertaking under § 323." *Id.*

*Green* was decided at summary judgment after the plaintiff had ample opportunity to adduce evidence in support of her claim. By contrast, the present case is before the Court on a motion to dismiss. The issue here is not whether Plaintiffs have met their burden but rather whether there is any set of facts that, if proved, would entitle them to

14

relief under § 323. The U.S. District Court for the District of Arkansas considered very similar allegations in *Arkansas Carpenters' Health & Welfare Fund v. Philip Morris, Inc.*, 75 F. Supp.2d 936 (E.D. Ark. 1999). In that case, a Union Pension Funds sued several tobacco companies under many theories of liability including negligent breach of a special duty undertaken through the tobacco companies' advertisements. The district court granted the tobacco companies' motion to dismiss, citing the practical impossibility of plaintiffs establishing proximate cause under that theory. The Court held:

> This Court finds no Arkansas case even remotely suggesting that one can assume the sort of "special responsibility" plaintiff describes simply by placing advertisements or issuing corporate statements. Furthermore, any cause of action involving negligence requires the element of proximate cause. The scenario described by plaintiff has much too tenuous a causal connection between the defendants' actions and plaintiff's injuries for the former to be the proximate cause of the latter. Even if one were to assume that defendants' public statements and advertisements were directed to the Fund (though the ads were plainly targeted toward consumers), it is difficult to say with any measure of certainty, much less precision, how many of its participants the Fund might have been dissuaded from smoking but for the defendants' suppression of critical information.
>
> This lack of certainty as to causation, the difficulty in fixing the portion of plaintiff's damages which are fairly attributable to defendants' conduct, etc., speak to the practical considerations of why such a claim should not be allowed. Simply put, plaintiff cannot show that defendants' alleged conduct was the proximate cause of its injuries.

*Id.* at 944-945.

The same conclusion has been reached in every other cigarette case alleging breach of a special duty of which this Court is aware. *See, e.g. Wright v. Brooke Group*, 652 N.W.2d 159, 178 (Iowa 2002) ("We do not think the defendants' statements that they would report on the results of their research into the health effects of cigarette smoking

15

was an undertaking to render a service to its customers."); *Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp.2d 755, 774 (W.D. Ky. 1998) (holding that cigarette manufacturers' pledges of "resources to assist the scientific and public health communities with tobacco research" did not undertake "to do anything specific for any particular person or entity . . . ."); *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp.2d 236, 245-46 (D. Mass. 1999) (dismissing section 323 claim brought by employee health benefit plan to recover expenses it paid for its participants' smoking-related health care, stating "the 'relationship' between sellers of a product and purchasers of that product" is not an appropriate basis for section 323 liability).

This Court finds the reasoning of its sister courts persuasive and concludes that Plaintiffs cannot possibly prove that Defendants undertook such a special duty through advertisements aimed at the general public. Nor is there any reason to believe that Plaintiffs could prove that a breach of such a duty–e.g., by failing to publicize the results of their research or by deliberately distorting it–proximately caused the death of Plaintiffs' decedent. The claim is far too tenuous to survive even the forgiving standards of a motion to dismiss.

### III.    Motion for Entry of Default

Also pending before the Court is Plaintiffs' Motion for Entry of Default against the non-answering Defendants: Hill & Knowlton, Inc., the American Tobacco Co., and the Tobacco Institute. As service was attempted on these Defendants before removal to

16

federal court, Missouri state law governs sufficiency of process. *See Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003)("Since this event occurred prior to removal, we must determine whether it constituted sufficient service in accordance with the law of the jurisdiction in which the action was filed.").

There are two ways of effecting service upon a foreign corporation under Missouri law. First, such corporation my be served

> by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivery copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process.

Mo. Sup. Ct. R. 54.09, 54.13(b)(3). Alternatively, the corporation may be served "by mailing a copy of the summons and petition by first class mail, postage prepaid, to the [corporation] to be served, together with two copies of a notice an acknowledgment . . . and a return envelope, postage prepaid and addressed to the sender," so long as the notice and acknowledgment of receipt of summons are returned within thirty days after mailing. Mo Sup. Ct. R. 54.16. Plaintiffs claim to have served the Defendants by personal service to a registered agent. All three of the non-answering Defendants have now appeared for the limited purpose of opposing the Motion for Default by denying that proper service was ever effected.

Brown & Williamson Tobacco Corporation ("B&W"), one of the Defendants who has properly been served, resists the Motion for Default on behalf of the American Tobacco Company ("American"). In support, it offers the following evidence which

17

Plaintiffs' have not contested. American merged into B&W on February 28, 1995, and no longer exists as a separate legal entity. All of its obligations were assumed by B&W. Indeed, this information was clearly known to Plaintiffs as Paragraphs 8 and 9 of their Complaint allege, "B&W is the successor by merger to The American Tobacco Company, and is being sued in its individual capacity and in its capacity as successor by merger to The American Tobacco Company. . . . Hereinafter, Defendants B&W and The American Tobacco Company will be collectively referred to as 'B&W.'" Nevertheless, Plaintiffs attempted service on Daniel Green, an attorney in Jefferson City, whom they mistakenly believed to be American's agent. Green has since filed an affidavit with the Court stating that he is not now and has never been a registered agent for American [Doc. # 27].

Defendant Hill & Knowlton, Inc. ("H&K"), also denies service was ever effected. Plaintiffs claim in their Motion to have served H&K on June 23, 2005, by leaving a summons with a secretary in the Jefferson City Law Offices of Clyde P. Angle, an attorney whom Plaintiffs allege to be the registered agent for H&K in Missouri, c/o United Corporate Services, Inc. ("United"). Upon receipt of the summons, Angle checked his list of companies for whom United was authorized to accept service. Finding that he had no authority to accept service on behalf of H&K, Angle returned the summons to the Cole County Sheriff's Office. The summons was filed with the notation "Returned to Cole Sheriff by atty. Stated he is not the reg. agent for this company."

H&K concedes that in 1988, when it still did business in Missouri, it designated United as its agent for service of process in this state. However, in 1994, H&K withdrew

from Missouri and terminated United's authority to act as its agent for service of process. The Secretary of State of Missouri issued a Certificate of Withdrawal to H&K on April 22, 1994. Since that date, H&K has not had any agent for service of process in Missouri.

Moreover, H&K claims that when it first learned of this suit from the counsel of a co-defendant, it investigated what attempts at service had been made and then called Plaintiffs' counsel to say that H&K did not consider itself served. H&K offers a sworn declaration from its counsel that in that telephone conference, Plaintiffs' counsel admitted over the phone that it knew the summons had been returned to the Sheriff's office and that service was never properly made. Plaintiffs counsel indicated that he would send H&K counsel a request for waiver of service in exchange for more time to answer, but the request was never sent. Later, when H&K counsel again contacted Plaintiffs' counsel, he learned that the attorney he had previously talked to was no longer at the firm and that Plaintiffs' counsel now maintained that service was proper and H&K was in default. Plaintiff has not Replied to H&K's Suggestions in Opposition and does not challenge any of the assertions made by H&K.

The final Defendant against whom Plaintiffs request an entry of default is the Tobacco Institute ("TI"). Plaintiffs allege that TI was served on June 21, 2005, through a summons delivered to CT Corporation System ("CT"). Like H&K, however, TI formally withdrew from doing business in Missouri on April 4, 1994, and terminated CT as its registered agent at that time. TI has had no registered agent in Missouri since 1994. When service was attempted on CT in June 2005, CT refused the summons and returned

19

it to Plaintiffs' counsel by Federal Express without forwarding it on to TI. No other form of service has been attempted, and counsel for TI only learned of the suit from an attorney for one of the served Defendants.

Based on the considerable evidence produced by the non-answering Defendants, as well as Plaintiffs' silence in the face of such evidence, the Court concludes that Plaintiffs attempted service on the American Tobacco Company, H&K, and TI was ineffective. The Plaintiffs shall have twenty (20) days from the date of this Order to effect proper service on H&K and TI or those parties will be dismissed from the case. As for the Returns of Service filed by Plaintiffs despite their obvious defects, the Court reminds all parties that they are subject to the strictures of Rule 11 when filing any pleading, written motion, or other paper with the Court.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that the Moving Defendants' Motion to Dismiss or in the Alternative for a More Definite Statement [Doc. # 21] is GRANTED in part and DENIED in part. The Motion is DENIED as to Counts I and II, provided that Plaintiffs are ORDERED to amend their Complaint within twenty (20) days of the date of this Order to supply a more definite statement of which other products manufactured by Defendants caused the decedents' death. If Plaintiffs fail to do so, Counts I and II shall be dismissed against all Moving Defendants save Philip Morris USA, Inc. The Motion is DENIED as to Counts III, IV, VI, and VII, provided that Plaintiffs are ORDERED to amend their Complaint

within twenty (20) days of the date of this Order to plead Counts III, IV, VI, and VII with particularity. If Plaintiffs fail to do so, Counts III, IV, VI, and VII shall be dismissed. The Motion is GRANTED as to Count V, which is DISMISSED for failure to state a claim upon which relief may be granted. It is further

ORDERED that Plaintiffs' Motion for Entry of Default [Doc. # 25] against Defendants Hill & Knowlton, Inc., the American Tobacco Co., and the Tobacco Institute's is DENIED. It is further

ORDERED that Plaintiffs serve Defendants Hill & Knowlton, Inc., and the Tobacco Institute within twenty (20) days of the date of this Order or those Defendants shall be dismissed from the case.


                                    s/ Nanette K. Laughrey
                                    NANETTE K. LAUGHREY
                                    United States District Judge


Dated: May 19, 2006
Jefferson City, Missouri

Case 4:05-cv-01182-NKL   Document 48   Filed 05/19/06   Page 21 of 21