IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WILLIAM BARYO, JR.; BRETT BAUGHMAN; BETH BAUGHMAN; <br><br>Plaintiffs, <br><br>v. <br><br>PHILIP MORRIS USA, INC.; R.J. REYNOLDS TOBACCO CO.; BROWN & WILLIAMSON HOLDINGS, INC., f/k/a BROWN & WILLIAMSON TOBACCO CORP.; LORILLARD TOBACCO CO.; HILL & KNOWLTON, INC.; THE AMERICAN TOBACCO CO.; LIGGETT & MYERS, INC.; LIGGETT GROUP, INC.;UNITED STATES SMOKELESS TOBACCO CO.; and THE TOBACCO INSTITUTE; <br><br>Defendants. | Case No. 05-1182-CV-W-NKL |

ORDER

Pending before the Court are Plaintiffs William Baryo, Jr.; Brett Baughman; and Beth Baughman's ("Plaintiffs") Motions For Leave to File Second Amended Complaint Out of Time [Doc. # 163] and To Disqualify Shook, Hardy & Bacon ("Shook") [Doc. # 164]. Also pending before the Court is a discovery issue held over from a June 7, 2007, telephone conference regarding the production of the fee agreement between Plaintiffs and their Counsel, William H. Pickett. For the reasons set forth below, both Motions are denied and Pickett is ordered to produce his fee agreement to Defendants.

1

## I. Motion to Amend

Plaintiffs seek the Court's leave to Amend their Complaint one year out of time in order to add two paragraphs to their strict liability claim in Count II. The additional paragraphs would allege that Defendants Philip Morris and Brown & Williamson ("Defendants") are collaterally estopped from denying that their cigarettes are unreasonably dangerous. The purported basis for the estoppel is a November 2003 Missouri state court jury verdict against Defendants in the case of *Thompson v. Brown & Williamson et al.*, Jackson County Case No. 00CV220555, which was affirmed on appeal by the Missouri Court of Appeals on August 22, 2006. *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76 (Mo. Ct. App. 2006).

Under the Court's Scheduling Order, the deadline to amend pleadings in this case was May 15, 2006 [Doc. # 17]. Fed. R. Civ. P. 6(b) provides that

> When by . . . order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

Plaintiffs claim their failure to amend their complaint earlier to allege collateral estoppel is the result of "excusable neglect" because the 2003 jury verdict only became "final" upon the Missouri Supreme Court's denial of transfer on December 19, 2006. Plaintiffs are mistaken. "The application of collateral estoppel in diversity cases is determined according to state law." *Nanninga v. Three Rivers Elec. Coop.*, 236 F.3d 902, 906 (8th Cir. 2000). Under Missouri law, "[w]hen a final judgment is rendered by a trial court, it constitutes a final adjudication on the merits, even though it is appealed." *Consumers Oil*

2

*Co. v. Spiking*, 717 S.W.2d 245, 251 (Mo. Ct. App. 1986); *see also Home Ins. Co. v. Butler*, 922 S.W.2d 66, 68 (Mo. Ct. App. 1996) ("the pendency of an appeal does not eradicate the finality of a judgment of conviction for collateral estoppel purposes.").

The judgment upon which Plaintiffs would predicate their amended allegations of collateral estoppel has been final for three and a half years, and Plaintiffs have known of its existence at least since November 2006 when they cited it in their Suggestions in Support of Plaintiffs' Motion to Determine the Sufficiency of Defendants' Responses to Plaintiffs' First Request for Admissions [Doc. # 116]. "[A] lawyer's misunderstanding of clear law cannot constitute excusable neglect." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 464 (8th Cir. 2000); *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1255 (11th Cir. 2007) ("counsel's misunderstanding of the law cannot constitute excusable neglect"). Even if Plaintiffs' mistaken belief in the meaning of finality under Missouri law were excusable neglect, Plaintiffs have offered no excuse for waiting six months since the Motion to Transfer was denied before moving for leave to amend their Complaint. The Motion to Amend is denied as untimely.[1]

## II. Motion to Disqualify Shook, Hardy & Bacon

Plaintiffs move to disqualify Shook from representing Defendants because Joseph Gall, an attorney who worked for Shook's predecessor in interest, once represented

---

[1]Without delving too deeply into the merits of Plaintiffs' collateral estoppel argument, it is likely that Plaintiffs' amendment would be futile too, given the inconsistent judgments in tobacco cases against the Defendants in Missouri courts. *See, e.g., VanDenBurg v. Brown & Williamson Tobacco Corp.*, Case No. 03CV237238 (Mo. Cir. Ct. Jackson County, Feb. 22, 2006); *Welch v. Philip Morris, Inc.*, Case No. 00CV209292 (Mo. Cir. Ct. Jackson County, June 18, 2003).

3

Modern Graphics, Inc., a company wholly owned by the Plaintiffs' decedent, Cathy Baryo. In 1993 and 1994, Gall represented Modern Graphics, Inc., in its corporate dissolution. Although Cathy Baryo was the president of Modern Graphics at the time, Plaintiffs have offered no evidence that Gall or any other Shook attorney ever represented Baryo personally. Gall no longer works for Shook.

>Missouri Supreme Court Rule 4-1.9(a) provides,
>
>A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 4-1.10 further provides,

>(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
>>(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>>
>>(2) any lawyer remaining in the firm has information protected by Rules 4-1.6 and 4-1.9(c) that is material to the matter.

Comment 3 to Rule 4-1.9 explains that

>Matters are "substantially related" for purposes of this Rule 4-1.9 if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

As noted above, Gall's representation of Modern Graphics, Inc., related to its corporate dissolution. The current action is a wrongful death products liability suit. Nevertheless,

4

Plaintiffs contend that the matters are "substantially related" because "the Decedent's employment and income are relevant to the damages suffered by the members of the wrongful death class and have been the subject of extensive discovery by counsel for Defendants, including attorneys employed by Shook."

Plaintiffs' arguments fail for three reasons. First, no Shook attorney ever represented Cathy Baryo. Although Gall communicated with Baryo in the course of his representation of Modern Graphics, Inc., all the correspondence offered by Plaintiffs confirms his attorney-client relationship existed with the company itself. "A corporation is a legal entity, separate and apart from the person or persons who are stockholders and directors of the corporation and counsel who represents a corporation is not ordinarily precluded from acting as counsel in suing a director." *Terre Du Lac Property Owners' Asso. v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983); Mo. Sup. Ct. R. 4-1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.").

Secondly, Cathy Baryo is not a party to the present case. Under Missouri's wrongful death statute, the action is vested in the decedent's survivors, not the decedent's estate. *See Sullivan v. Carlisle*, 851 S.W.2d 510, 515 (Mo. 1993) ("a wrongful death claim does not belong to the deceased. The right of action is neither a transmitted right nor a survival right, but is created and vests in the survivors at the moment of death.") (internal citations omitted); *Reese v. United States Fire Ins. Co.*, 173 S.W.3d 287, 298 (Mo. Ct. App. 2005) ("a wrongful death action belongs to the decedent's survivors, not

5

the decedent, and does not vest in the decedent's estate"). The Plaintiffs in this case are William Baryo, Jr.; Brett Baughman; and Beth Baughman, none of whom has ever been represented by Shook or any of its former attorneys.

Finally, Plaintiffs wrongful death suit and Modern Graphics, Inc.'s corporate dissolution are not "substantially related" matters. As the comment to Rule 4-1.9 explains, actions are not "substantially related" unless they "involve the same transaction or legal dispute" or if there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." There is no dispute that the cases do not involve the same transaction or legal dispute. Nor have plaintiffs demonstrated a "substantial risk" that in his representation of Modern Graphics, Inc., Gall obtained "confidential factual information" about Cathy Baryo's employment and income. It is true that Cathy Baryo's past employment and income with Modern Graphics, Inc., are relevant to Plaintiffs' damages in their wrongful death case and, as such, are fully discoverable by Defendants in the present action. However, even assuming that Shook obtained such information about non-client Cathy Baryo during its representation of Modern Graphics, Inc., and retained such information during the intervening dozen years, it is difficult to see how Shook's prior possession of information that it is now entitled to discover anyway could warrant the firm's disqualification. Plaintiffs' Motion to Disqualify Shook is therefore denied.

**III.    Fee Agreements**

6

On June 7, 2006, the Court held a telephone conference to address several discovery issues, during which the Court invited the parties to submit further briefing within seven days as to whether Plaintiffs' counsel William H. Pickett's fee agreement with Plaintiffs was discoverable or privileged. Defendants responded; Plaintiffs did not.

Although he represents Cathy Baryo's survivors in this wrongful death action, Pickett also had a 20 year personal relationship with the deceased during which he witnessed her smoking habits and urged her to quit. Therefore, as a potential fact witness in this case, he submitted to deposition by Defendants on May 8, 2007. Because his financial interest in the outcome of the trial goes to his bias as a potential trial witness, Defendants requested the production of Pickett's fee arrangement with Plaintiffs. Plaintiffs refused on the grounds of attorney-client privilege.

Under Fed. R. Evid. 501, privilege is determined by the law of the forum state when the Court sits in diversity. In *Tipton v. Barton*, 747 S.W.2d 325 (Mo. Ct. App. 1988), the Missouri Court of Appeals held that, where

> billing statements do not include detailed entries which advise, analyze or discuss privileged communications[,] [t]he mere fact that City Attorney Wohler prepared the billing statements does not render those statements confidential. The billing statements are extraneous to Wohler's legal advice or work product. We find that the billing statements are neither privileged communications nor work product and do not fall within the attorney-client privilege.

*Id.* at 332. Moreover, in an Informal Advisory Opinion on Mo. Sup. Ct. R. 4-1.6, which governs confidential information, the Missouri Legal Ethics Counsel has concluded that "[t]he amount of the Attorney's fee is not confidential information under Rule 4-1.6."

Mo. Leg. Ethics Comm., Informal Op. 980037 (2006). Courts in other jurisdictions have reached the same conclusion. *See, e.g., Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) (fees are incidental to relationship and do not involve "confidential communications"); *In re Grand Jury Matter*, 926 F.2d 348, 352 (4th Cir. 1991) (fee arrangements not privileged where they do not reveal confidential communications); *Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 227 (D.D.C. 1995) (disclosure of billing arrangement does not violate attorney-client privilege because such information ordinarily reveals no confidential, professional communication).

Plaintiffs have offered no response to Defendants' brief, nor any argument that the fee arrangement with their attorney contains any confidential communications itself. Accordingly, the Court concludes that William H. Pickett's fee agreement with the Plaintiffs is not privileged and may be discovered by Defendants.

**IV.  Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs' Motions For Leave to File Second Amended Complaint Out of Time [Doc. # 163] and To Disqualify Shook, Hardy & Bacon ("Shook") [Doc. # 164] are DENIED. It is further

ORDERED that Plaintiffs' counsel produce to Defendants within seven days of the date of this Order evidence of his financial interest in the outcome of this litigation, i.e., his fee arrangement with the Plaintiffs, redacted of any privileged information. If

Defendants are unsatisfied with the discovery produced, they are to contact the Court immediately to arrange a telephone conference.

                                                  s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 17, 2007
Jefferson City, Missouri