IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WILLIAM BARYO, JR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 05-1182-CV-W-NKL |
| | ) |
| PHILLIP MORRIS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiffs William Baryo, Jr., Brett Baughman and Beth Baughman originally sued Defendant Lorillard Tobacco Company (Lorillard) in Missouri state court for the wrongful death of Cathy Y. Baryo. Lorillard moves for summary judgment [Doc. # 205], arguing Plaintiffs cannot establish that its cigarettes caused or contributed to Ms. Baryo's death. Plaintiffs, now pro se, failed to respond, despite a show cause order [Doc. # 217] or the Court's reminder that they were under an obligation to comply with the Federal Rules during the course of this case [Doc. # 199]. This Court now grants summary judgment for Lorillard.

**I. Facts**

Because Plaintiffs did not respond to Lorillard's motion for summary judgement, the Court adopts Lorillard's Statement of Uncontroverted Facts. *See* Local Rule 56.1(a). Cathy Baryo was diagnosed with lung cancer in August or September of 1997, and she died January 1, 1999, at 48 years of age. She was a long-time smoker, having started when she was

1

around 15 years old.

In their First Amended Complaint, Plaintiffs allege that Ms. Baryo died as the result of smoking cigarettes manufactured and sold by Lorillard and the other Defendants. Plaintiffs' Supplemental Answers to Interrogatories state that Ms. Baryo smoked three brands of Lorillard cigarettes: Maverick, Old Gold and Newport. Despite this claim, when deposed and asked what brands of cigarettes Ms. Baryo smoked, no one, including Plaintiffs, testified that she smoked either Old Gold or Maverick brands. Only William Baughman (Ms. Baryo's ex-husband) and William Pickett (Plaintiffs' former attorney and Ms. Baryo's sometime boyfriend) testified that she smoked Newport cigarettes. William Baughman estimated that Ms. Baryo smoked approximately 40 packs of Newport cigarettes in total between 1965 and 1975. Pickett, who dated Ms. Baryo for approximately a year in 1978 or 1979, and then again from approximately 1990-1993, testified that he knew she smoked Newport cigarettes, but could not quantify how many she smoked.[1]

## II.     Discussion

### A.     Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary

---

[1] Pickett apparently did not maintain contact with Ms. Baryo between the times they dated.

2

judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).

**B.  Causation**

Causation is an essential element in Plaintiffs' claims against Lorillard. *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. 1993) ("Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with."). Under Missouri law, "the 'but for' test for causation is applicable in all cases . . . ." *Id.* "Where the plaintiff suffers injury from exposure to a toxin from products manufactured or sold by multiple defendants, the plaintiff must plead

3

and prove, at a minium, that each defendant's product was a substantial factor in causing injury." *Hunt v. Air Prods. & Chems.*, No. 052-9419, 2006 WL 1229082, at *5 (Mo. Cir. Ct. Apr. 20, 2006) (citing *Bennett v. Rapid Am. Corp.*, 816 S.W.2d 677 (Mo. 1991)). However, "[u]nder Missouri law, 'absolute certainty of causation is not required in a product liability case and . . . probative facts established by circumstantial evidence and pointing to the desired conclusion with enough certainty to be reasonable and probable is sufficient." *Efting v. Tokai Corp.*, 75 F. Supp. 2d 1006, 1012 (W.D. Mo. 1999) (citing *Bass v. Gen. Motors Corp.*, 150 F.3d 842 (8th Cir. 1998)). As a result, "Plaintiffs need only present facts raising a reasonable inference that their injuries resulted from a defect in defendants' product." *Id.* (citing *Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 659 (8th Cir. 1997)).

The deposition testimony of Brett Baughman, Beth Baughman, William Baughman and William Pickett fails to establish that Ms. Baryo smoked any Lorillard brands other than Newport. As for Newport, William Baughman estimated she only smoked approximately 40 packs spread out over a decade. Pickett stated, "Newport I remember or some other kind of menthol-related stuff at some point in time," but he did not have "the foggiest idea" how many packs of Newports she smoked in the time he knew her. There is no other evidence of how many packs of Newports Ms. Baryo smoked, although the record suggests she did not smoke them regularly.

In support of its summary judgment motion, Lorillard attached the affidavits of Dr. David H. Goldstein, M.D., and Dr. Edwin van Wijngaarden, Ph.D. Dr. Goldstein stated that he reviewed all available medical records regarding Ms. Baryo, as well as pertinent portions

4

of deposition testimony from William Baughman, Beth Baughman and William Pickett. He also reviewed Plaintiff's First Amended Complaint and Plaintiff's Answers to Lorillard's First Interrogatories. In coming to his conclusions, Dr. Goldstein assumed Ms. Baryo smoked twice the amount of Newport cigarettes reported in these records; in other words, 80 packs. Dr. Goldstein explained that a patient's smoking history is measured in "pack years": "A sufficient pack year history for the development of lung cancer is generally accepted as an amount and duration of smoking in excess of 10 pack years. A small number of studies reflect an increased risk of lung cancer in smokers who have a cumulative smoking history greater than 5 pack years." Applying Ms. Baryo's pack history to the generally accepted standard for development of lung cancer, Dr. Goldstein noted, "Ms. Baryo's Lorillard brand smoking history was at least 25 times lower than the 5 pack year threshold cited above, and 50 times lower than the 10 pack year threshold." Thus, he concluded that her smoking history with regard to Lorillard cigarettes was not sufficient to increase her risk of developing lung cancer beyond that of a person who never smoked. Dr. Goldstein explained, "[I]t is my opinion, to a reasonable degree of medical and scientific certainty, that Cathy Baryo's Lorillard brand smoking history was not sufficient to cause or contribute to her development of lung cancer."

Dr. van Wijngaarden, an epidemiologist, also reviewed the record and Ms. Baryo's medical history to determine whether Lorillard cigarettes increased her risk of lung cancer in a statistically significant manner. He assumed, for the basis of his analysis, that Ms. Baryo smoked 100 packs of Lorillard brand cigarettes (0.27 pack years). After analyzing this in

5

Case 4:05-cv-01182-NKL    Document 229    Filed 01/18/08    Page 5 of 7

comparison with 15 epidemiological studies, Dr. van Wijngaarden found Ms. Baryo had a relative risk of 1.02 for 100 packs and 1.01 for 40 packs, noting that "[t]hese estimates of relative risk are very close to the level of a never smoker and, from an epidemiological perspective, are not distinguishable from that of a never smoker." He further explained that the risk of lung cancer for women with Ms. Baryo's smoking history (only considering Lorillard brand cigarettes) was indistinguishable from women who have never smoked. Dr. van Wijngaarden concluded to a reasonable degree of scientific certainty that her Lorillard smoking history did not materially increase her overall risk of lung cancer.

Lorillard has met its burden of showing there is no genuine issue of material facts, and Plaintiffs have not come forward with any facts to the contrary. Plaintiffs have not shown, with a reasonable and probable certainty, that Lorillard brand cigarettes were a substantial factor in causing Ms. Baryo's injuries or death. Thus, based on the record, no reasonable jury could infer that Ms. Baryo's injuries resulted from Lorillard brand cigarettes. The Court grants summary judgment for Lorillard on all claims.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Defendant Lorillard Tobacco Company's Motion for Summary Judgment [Doc. # 205] is GRANTED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: January 18, 2008

Jefferson City, Missouri